The TEXAS EMPLOYMENT COMMISSION, et al., Appellants,

v.

Leonce J. NORRIS, Appellee.

No. 09–82–056 CV.

Court of Appeals of Texas, Beaumont.

June 28, 1982.

Rehearing Denied July 14, 1982.

Diane Van Helden, Asst. Atty. Gen., Austin, James Hambright, Beaumont, for appellants.

M. Diane Dwight, Thomas Rugg, Tom Swearingen, Port Arthur, for appellee.

## OPINION

KEITH, Justice.

Defendants below appeal from an order granting a temporary injunction. Plaintiff, a claimant of unemployment benefits, invoked the jurisdiction of the trial court as an appeal from a decision by the Commission denying to him benefits under the Unemployment Compensation Act, *Tex.Rev. Civ.Stat.Ann. art. 5221b–1 et seq. (1971)*, hereinafter "Act". The suit was filed timely under *Sec. 4(i)*, and Texaco, Inc., and the Commission were named parties defendant.

Simultaneously with the filing of his original petition, plaintiff secured the issuance of an ex parte temporary restraining order requiring the Commission and Texaco to pay him the benefits he sought at the conclusion of his suit.[1]

The Commission and Texaco appeared at the hearing on the application for a temporary injunction. The Commission filed its plea to the jurisdiction of the Court to grant injunctive relief; Texaco filed its motion to vacate the temporary restraining order and set out many alleged defenses to the preliminary relief sought by plaintiff. After a lengthy hearing, the trial court granted a temporary injunction wherein the defendants were *commanded forthwith*:

1. "to pay [plaintiff] unemployment compensation benefits for the full duration of time and in the full amount to which he is entitled under the other terms and sections of the Texas Unemployment Compensation Act."

2. "to cease and desist from continuing to apply the 5d (sic) disqualification in favor of Texaco, Inc., and against the payment of unemployment compensation claims brought pursuant to the stoppage of work at the Texaco Main Plant, Port Arthur, Texas."[2]

3. "to cease and desist and are hereby restrained from taking any action or making any effort to enforce the provisions of

---

1. The Commission and Texaco, according to the order, were "commanded forthwith to pay unemployment compensation benefits, in conformity with a decision of Referee Summerfield dated April 6, 1982, and are hereby commanded forthwith to desist and refrain from applying any statutory disqualification against Leonce J. Norris under Section 5(d) of the Unemployment Compensation Act, from the date of entry of this order until the tenth day after its entry."

   We note, in passing, that plaintiff had appealed from an order of the Commission denying benefits, an order which set aside "Referee Summerfield's decision" mentioned in the restraining order.

2. The "labor dispute" disqualification which is referred to in the order is to be found in *Sec. 3(d)* of the Act (1971–1981 Pamphlet Supp.). Counsel also makes reference in her brief to the "5d disqualification" without further reference to the statute. We assume that reference is to *Sec. 3(d)* noted above.

6b (sic) regarding the repayment of unemployment compensation benefits until such time as this temporary injunction shall be dissolved in whole or in part."[3]

The defendants perfected their separate appeals immediately, with Texaco filing a motion to stay the temporary injunction order pending the determination of its validity; the Commission moved to advance the submission of the cause. We granted both motions in an order which stayed the injunction in order to protect our jurisdiction, shortened the time for completion of the record and the filing of briefs, and heard the appeal on a full record. *Tex.R. Civ.P. 385(f)*.

### PART I

■ All parties concede, and we agree, that the trial court had jurisdiction of plaintiff's appeal from the order of the Commission denying benefits. He duly and timely perfected his appeal under the provisions of *Sec. 4(i)* of the Act, but the very statute which acted as his key to the courthouse door in his suit against the State provided: "A petition for judicial review shall not act as a supersedeas."

In this Part I we consider only the contentions of the defendants that the trial court lacked jurisdiction to grant the injunctive relief as brought forward by the defendants below.

It is argued that the injunction issued, requiring the disbursement of public trust funds by state officials to the plaintiff, is in effect a suit against the State and plaintiff has not alleged consent of the State to be sued. The Attorney General cites *State v. Isbell*, 127 Tex. 399, 94 S.W.2d 423, 424 (1936), where the Court wrote:

"It is a rule of universal recognition that a state cannot be sued without its consent, and then only in the manner, place, and court or courts designated."

*Isbell* was followed in *Olson v. Texas Employment Commission*, 593 S.W.2d 866, 867 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n. r. e.), where the trial court's jurisdiction was founded solely upon *Sec. 4(i)* of the Act following a denial of his claim for benefits. *Olson* "also sought actual and punitive damages from the commission for himself and others," but asserted no other base for his suit and did not allege permission to sue. The trial court's dismissal of Olson's suit for lack of jurisdiction was affirmed.

■ The result reached in *Olson*, supra, was required by application of the well established rule that actions created by the Legislature are governed strictly by the statute of their creation. *Texas Emp. Comm'n v. International U. of E., R. & M. Wkrs.*, 163 Tex. 135, 352 S.W.2d 252, 254 (1961). *Accord: Williams v. Back*, 624 S.W.2d 272, 276 (Tex.App.—Austin 1981, no writ); *Texas Employment Commission v. Ortiz*, 574 S.W.2d 213, 214 (Tex.Civ.App.—Corpus Christi 1978, no writ).

Plaintiff places primary reliance upon *Texas Unemployment Compensation Comm'n v. Metropolitan Bldg. & Loan Ass'n*, 139 S.W.2d 309 (Tex.Civ.App.—Austin 1940, writ ref'd),[4] for his contention that the trial court had jurisdiction to grant an injunction against the Commission. The Court in *Metropolitan Bldg. & Loan*, upheld the jurisdiction of a trial court to grant injunctive relief to prevent a multiplicity of suits because

"[T]he failure to pay the contributions or taxes, and to comply with other regulatory requirements of the Commission, would subject each of the appellees [who

---

**3.** The reference to "6b" without elaboration is not helpful. Again, we assume, from the context of the order, that the reference is to *Sec. 4(b)* of the Act providing for the recovery or offset of benefits paid but which should have been denied.

**4.** While *Metropolitan Bldg. & Loan*, supra, received the unqualified approval of the Supreme Court, we find no instance where the jurisdictional holding has been cited or followed by a Texas Court.

Assuming, as we must, that the holding is correct, it has no application to this case where we have a single plaintiff pursuing his statutory right of appeal from a denial of benefits. If our plaintiff prevails, he will receive full relief in one suit, just as the Legislature provided.

numbered ten] to a multiplicity of suits and to the payment of accumulated penalties in the sum of thousands of dollars and years of imprisonment." (139 S.W.2d at 311)

We turn to another rule applicable to this cause. It has long been well established that legislative grants of property, rights, or privileges are to be construed strictly in favor of the state and " 'whatever is not unequivocally granted in clear and explicit terms is withheld.' " *State v. Standard,* 414 S.W.2d 148, 153 (Tex.1967). See also, *Rose v. Governor,* 24 Tex. 496, 504 (1859); *Empire Gas & Fuel Co. v. State,* 121 Tex. 138, 47 S.W.2d 265, 272 (1932). See also, *Gilbert v. State,* 437 S.W.2d 444, 446 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.).

There is no presumption of jurisdiction even though the suit was filed in the district court, a court of record of general jurisdiction. The court could only exercise "special statutory powers in a special statutory manner." *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084, 1089 (1926). As applied to the facts of this case, the Court—after a trial on the merits—could order only payment or denial of benefits to plaintiff in the "special statutory manner" provided in the Act.

The Commission also relies upon language found in *Campbell v. Texas Employment Commission,* 598 S.W.2d 40, 41 (Tex. Civ.App.—Austin 1980, no writ), where the Court observed: "The only section that would have authorized appellant to sue the State under the facts of this case is Article 5221b–4(i)", followed by this final determination:

"We therefore hold that the statutory provisions of Article 5221b, et seq. (Supp. 1980), afford the exclusive remedies available to the appellant in this case. Since appellant has not brought himself within these statutory provisions, the trial court was without jurisdiction to render a declaratory judgment as to appellant's liability under the *Texas Unemployment Compensation Act.* (598 S.W.2d at 42)[5]

We have found nothing in the statute to indicate that the Legislature intended to authorize any injunctive relief to a claimant denied benefits by the Commission, much less the attempted wholesale expansion of what amounts to class action litigation in a hearing on an application for a temporary injunction as was done in this case.

The dominant purpose of plaintiff's suit was to secure an adjudication that he was entitled to benefits under the Act, a right granted to him by the statute itself. The temporary injunction was, consequently, an ancillary injunction. *Houston Oil Co. of Texas v. Village Mills Co.,* 109 Tex. 169, 202 S.W. 725, 226 S.W. 1075 (1918); *City of Dallas v. Wright,* 120 Tex. 190, 36 S.W.2d 973 (1931); *Winslow v. Duval County Ranch Co.,* 519 S.W.2d 217, 220 (Tex.Civ. App.—Beaumont 1975, writ ref'd n. r. e.).

Finally, there is the holding of the Supreme Court in *Texas Liquor Control Board v. Canyon Creek Land Corp.,* 456 S.W.2d 891, 895 (Tex.1970), where the Court considered a similar contention. The Court wrote:

"The full right of appeal has been granted here but with the proviso that the decision of the district court shall not be suspended pending review by the appellate courts. *This is a matter for determination by the Legislature, and a court of equity is not authorized to intervene simply because it concludes that enjoyment of the privilege should be protected during an appeal from the decision of the district court.*" (emphasis supplied)

We have not been directed to nor has our research disclosed any grant of jurisdiction to the trial court to order injunctive relief against the Commission at the instance of a dissatisfied claimant of benefits. There-

5. Commenting upon *Campbell,* supra, plaintiff's counsel asserts: "The Austin Court [in *Campbell*] recognized that once jurisdictional prerequisites are met the grant of jurisdiction is plenary and the Court is possessed of a panoply of remedies both legal and equitable."

We do *not* join in this evaluation and assessment of the holding in *Campbell.*

fore, such jurisdiction has, under the authorities, been withheld by the Legislature. *Empire Gas & Fuel Co. v. State*, supra (47 S.W.2d at 272). The trial court was not "authorized to intervene" as a court of equity. *Canyon Creek Land Corp. Case*, supra.

We sustain the first points of the Commission and Texaco asserting, in substance, that the trial court did not have jurisdiction to grant the temporary injunction now before us on this appeal.[6] We now hold that the trial court had subject matter jurisdiction as well as jurisdiction over the parties only in the appeal from the order of the Commission which was vested under the provisions of *Sec. 4(i)* of the Act. It did not have jurisdiction to enter the order granting the temporary injunction.

For the reasons and under the authorities herein cited, we take the following action:

1. The judgment granting the temporary injunction is reversed and said order is vacated.

2. We sever plaintiff's asserted cause of action for ancillary injunctive relief (which is before us) from his cause of action asserted under *Sec. 4(i)* of the Act, being an appeal from the order of the Commission denying benefits (which is not before us).

3. The severed claim for ancillary injunctive relief is here and now dismissed, without prejudice, however, to any of plaintiff's rights in his appeal under *Sec. 4(i)* still pending in the trial court.

Reversed and the order granting temporary injunction vacated.

6. The defendants below have many other points of error, some of which will be addressed in Part II of this opinion.

7. Accordingly, although all parties have considered the "work stoppage" provision of the statute as it applies factually to the current strike at Texaco, we do not address the question or consider the applicability of *Sec. 3(d)* of the Act to the facts shown in our record except to note that the Commission held that "the claimant is disqualified for benefits under Section 5(d) (sic) of the Act beginning January 11, 1982."

## PART II

Because of the importance of the questions presented, while we are of the opinion that the trial court had no jurisdiction to grant the temporary injunction, we will assume, arguendo, the contrary conclusion. Upon a consideration of the merits of this interlocutory appeal, we conclude that the judgment of the trial court should be reversed and the temporary injunction should be vacated. We now address a few of the *usual* requirements for the issuance of a temporary injunction.

■ In so doing, we note that in our review of the order granting the temporary injunction the merits of the underlying case are not now ripe for appellate review. We are limited in this appeal to a determination of whether there has been a clear abuse of discretion by the trial court in granting the temporary injunction.[7] See *Davis v. Huey*, 571 S.W.2d 859, 861–862 (Tex.1978). The rule was reaffirmed very recently in *Arnold v. Sentry Savings Association*, 633 S.W.2d 811 (Tex.1982).

■ A finding of abuse of discretion is required when the record reflects that the findings of the trial court necessary to sustain its order are not supported by some evidence of a substantial and probative character. *City of Houston v. Southwestern Bell Tel. Co.*, 263 S.W.2d 169, 171 (Tex. Civ.App.—Galveston 1953, writ ref'd).

In *Story v. Story*, 142 Tex. 212, 176 S.W.2d 925, 927 (1944), the Court laid down the rule applicable to this case, saying:

"The rule is generally recognized in this state that the extraordinary writ of injunction will not be granted where

Whether plaintiff is entitled to benefits under the Act must be determined in an orderly fashion by a trial on the merits of his appeal conducted in accordance with the rules governing appeals from orders of the Commission. A hearing on an application for a temporary injunction is not a substitute for, nor does it serve the same purpose as the hearing on the merits of the case. *Southwest Weather Research, Inc. v. Jones*, 160 Tex. 104, 327 S.W.2d 417, 421–422 (1959).

there is a plain and adequate remedy at law."

See also, *Rogers v. Daniel Oil & Royalty Co.*, 130 Tex. 386, 110 S.W.2d 891, 893 (1937). *Tex.R.Civ.P. 693* provides generally that the principles of equity shall govern injunction proceedings where not in conflict with the rules or statutes. *State v. Texas Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979). Indeed, it has been said that " 'the inadequacy of the remedy at law is both the foundation of, and conversely a limitation on, equity jurisdiction.' " *Burford v. Sun Oil Co.*, 186 S.W.2d 306, 314 (Tex.Civ.App.—Austin 1944, writ ref'd w. o. m.), quoting from what is now the black letter text in *30 C. J. S., Equity § 20, at 807 (1965)*. See also the lengthy list of cases supporting this rule cited in *Spoonmore v. Board of Polygraph Examiners*, 545 S.W.2d 588, 590 (Tex. Civ.App.—Tyler 1976, writ ref'd n. r. e.).

■ The allegations of plaintiff relating to the lack of an adequate remedy at law are set out in the margin,[8] and it is significant that the trial court did not make any finding of fact that there was no adequate remedy available. But, plaintiff argues:

"While recovery of the amount in dollars and cents is available to Leonce Norris at the conclusion of the trial on the merits in this case and the exhaustion of every appellate avenue, it is not as prompt an administration or as prompt a remedy as is interim payment."

In the abstract, it is difficult to fault the logic of the argument which would be applicable with equal cogency in every suit upon a promissory note, a claim for Workers Compensation, or any other demand for the payment of liquidated claims. The argument is not applicable to this appeal.

Indeed, the contention flies in the teeth of the holding in *Texas Liquor Control Board v. Canyon Creek Land Corp.*, supra, that a court of equity is not authorized to intervene "because it concludes that enjoyment of the privilege should be protected during an appeal from" the Commission.

"This is a matter for determination by the Legislature." (456 S.W.2d at 895)

The trial court abused its discretion in granting a temporary injunction in the absence of a showing that the plaintiff did not have an adequate remedy at law.

It is, likewise, veritable hornbook law that an applicant for injunctive relief must show irreparable injury will result if the relief is not granted. *6 Texas Practice, Remedies § 114, at 157 (2d Ed. 1973)*, and authorities therein cited. Several cases have defined the term. See, e.g., *Inman v. Padrezas*, 540 S.W.2d 789, 797 (Tex.Civ.App. —Corpus Christi 1976, no writ):

"An irreparable injury is an injury of such a nature that the injured party cannot be adequately compensated, or that the damages which result therefrom cannot be measured by any certain pecuniary standard."

See also, *Parkem Industrial Services, Inc. v. Garton*, 619 S.W.2d 428, 430 (Tex.Civ.App. —Amarillo 1981, no writ).

Plaintiff's recovery, if he were successful in his appeal from the Commission's order, was a fixed sum of money payable weekly in an amount fixed by the statute. There was only one element of uncertainty to his right to receive the payment: the possibility that he would be unable to establish his right to the payment.

It was shown upon the hearing that plaintiff had funds on deposit in a credit union, did not have unusual expenses or debts, and was relying for support upon the wages of his spouse. Plaintiff argues that his deposit was "held for retirement security" and that "[t]he monthly destruction of his retirement security fund constitutes irreparable injury." We do not concur in this view of the legal effect of the evidence, nor are we persuaded by the citation to *Long v. Castaneda*, 475 S.W.2d 578 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.), cited in support of the argument. *Long* was a suit to restrain a sheriff from conducting

---

8. Plaintiff alleged: "In view of the current protracted strike at the Texaco Main Plant and the harshness of economic conditions that have resulted therefrom, a legal remedy would be far too late in coming to afford him complete relief."

an execution sale on a mobile home and there were serious questions as to the validity of the writ of execution. (475 S.W.2d at 583)

Again, we hold that the trial court abused its discretion in granting injunctive relief without a showing of one of the necessary prerequisites for the granting thereof.

Also, it is apparent that the trial court did not consider the balancing of the equities doctrine discussed in *Remedies*, supra, § 115, at 161, as that doctrine has been applied. See, *Zmotony v. Phillips*, 529 S.W.2d 760, 762 (Tex.1975). In our discussion of this facet of the case, we must bear in mind that the trial court did much more than order the single plaintiff be paid weekly, the order commanded the Commission to pay *all* striking employees of Texaco their claimed benefits immediately.[9]

The only witness who spoke with knowledge to this issue was Bill Monks, Chief of Benefits of the Commission. We take this summary from the Commission brief which has not been challenged factually by plaintiff:

"... within two days of the issuance of the injunction sought by Appellee that $1,080,891.00 would be paid out to claimants who had filed claims as a result of the work stoppage. The potential benefits payable due to claims already filed would amount to $8,383,682.00. Potential liability for all claims could reach $23,500,000.00. The estimated percentage recovery of these sums [if paid and the Commission decision was upheld on appeal] pursuant to statutory authority of

the Commission [Sec. 4(b) Act] and past experience of the Commission in attempting to recover overpayments would range from forty-three to fifty-four percent."

The large sums of money which the trial court required the Commission to disburse were *public* funds created and existing under *Sec. 7* of the Act. *James v. Consolidated Steel Corporation*, 195 S.W.2d 955, 961 (Tex.Civ.App.—Austin 1946, writ ref'd n. r. e.).

With millions of dollars of public funds ordered paid out pursuant to a temporary injunction order, upon the record before us, it is obvious that the trial court did not apply the balancing of the equities rule. This rule was stated by the court in *General Tire & Rubber Co. v. Texas Pacific Coal & Oil Co.*, 102 S.W.2d 1086, 1089 (Tex.Civ.App. —Fort Worth 1937, writ ref'd):

"A court of equity, in determining whether an injunction shall issue, must consider the equities of the case. 'The conveniences and hardships that may result from the granting or refusing of the writ are balanced. The court will consider whether there is a probability of greater damage to the defendant if the writ be granted than to the plaintiff if it be denied.'"

Under this record, we are constrained to hold that the grant of the temporary injunction was an abuse of discretion in failing to balance the equities of the case. *Zmotony v. Phillips*, supra.

There are still other reasons why the trial court erred, one of which is that the order

---

**9.** Our record affirmatively shows that there was a work stoppage at the main plant of Texaco in Port Arthur which began on January 8, 1982. On May 28, 1982, the day the temporary injunction issued, 2,389 striking Texaco employees had already filed 7,353 weekly claims for unemployment benefits. Approximately 1,700 additional Texaco striking employees could have filed similar claims. The disputed past due claims aggregated more than one million dollars, with benefits exceeding $350,000 accruing each week thereafter.

The Commission was commanded, in the interlocutory order, to cease and desist "from continuing to apply" the work stoppage provision of the statute "against the payment of

unemployment compensation claims brought pursuant to the stoppage of work at the Texaco Main Plant, Port Arthur, Texas."

The order was tailored carefully to include not only the single plaintiff, Norris, but the claims of the 2,389 other claimants similarly situated.

In view of our disposition of the appeal, we do not find it necessary to comment upon the unusually broad nature of the order as it applied to other employees of Texaco who were not parties to the suit. The order was entered before appearance date and, of course, no proceedings under *Tex.R.Civ.P. 42*, relating to class actions, had been commenced.

issued did more than maintain status quo, which the court found to have been January 7, 1982.[10]

Under our undisputed record, the trial court erred in fixing the status quo as of January 7, 1982 (the day before the strike began), because at that time plaintiff had not sought unemployment benefits nor had any claims therefor been filed or denied. Instead, later, while the strike was in progress, a dispute arose after plaintiff began drawing benefits. Indeed, during the spring of 1982, plaintiff collected more than $2,200 in benefits.[11]

Nor was the trial court authorized, on the hearing of the application for the temporary injunction, to determine the rights of the parties under the cause of action asserted or the defenses urged. *Williamson v. County of Dallas*, 519 S.W.2d 495, 498 (Tex. Civ.App.—Waco 1975, writ ref'd n. r. e.), and authorities cited. Again, we find an abuse of discretion in granting to the plaintiff at a temporary injunction hearing the entire relief to which he might be entitled only at the conclusion of a trial on the merits.

The importance of the underlying litigation and the need for a prompt disposition of the cause upon the merits has led us to express our views upon the merits of the appeal notwithstanding our holding on the jurisdictional question. We recognize that if the trial court had no jurisdiction, Part II of this opinion constitutes dicta. Under these circumstances, we enter the judgment set out at the conclusion of Part I of this opinion.

In the event it be determined that the trial court had jurisdiction to grant injunctive relief, and only in such event, so as to eliminate delay, judgment will be entered for the reasons set out in Part II, namely: the judgment of the trial court granting the

temporary injunction will be reversed and said order vacated.

Reversed.

DIES, Chief Justice, concurring.

I concur in the results reached in this opinion because I also feel neither the trial court nor this court has jurisdiction in this case to enjoin temporarily the Texas Employment Commission. *Tex.Rev.Civ.Stat. Ann. art. 1735 (1962)* grants this authority and jurisdiction only to the Supreme Court of Texas. Plaintiff and the trial court should move with diligence to try the case on the merits as provided in the Act cited in the opinion.

---

**10.** "The 'status quo' to be preserved by temporary injunction is 'the last, actual, peaceable, noncontested status which preceded the pending controversy.'" *Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549, 553–554 (1953). See also, *State v.*

*Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975).

**11.** Referee Summerfield's decision, which was set aside by the Commission, was mailed on April 6, 1982. Plaintiff received benefits under this decision.